N. DENISE TAYLOR - State Bar No. 101434
BARBARA M. REARDON - State Bar No. 072338
TAYLOR BLESSEY LLP
350 S. Grand Avenue, Suite 3850
Los Angeles, CA 90071
Telephone: (213) 687-1600
Facsimile:  (213) 687-1620
dtaylor@taylorblessey.com
breardon@taylorblessey.com

Attorneys for Defendants,
DAVID COSSMAN, M.D.; TAYLOR BLESSEY, LLP; N. DENISE
TAYLOR, BARBARA M. REARDON, ANDREA P. HILBERT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ROBIN ROSEN<br><br>          Plaintiffs,<br><br>v.<br><br>RICHARD BOOTH; JEFFREY BRISKIN; BRISKIN, LATZANICH & PENE; MARGARET CAHILL; CARROLL, KELLY, TROTTER. FRANZEN & MCKENNA; DAVID COSSMAN, et al.<br><br>          Defendants. | CASE NO.: SACV11-01703-AG<br>(Assigned to: Hon. Andrew J. Guilford)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:     February 27, 2012<br>TIME:      10:00 a.m.<br>PLACE:   Courtroom 10D<br><br>Action Filed:   11/07/2011 |

TO PLAINTIFF ROBIN ROSEN, AND HER ATTORNEYS OF RECORD,

AND TO ALL OTHER PARTIES AND THEIR RESPECTIVE COUNSEL OF

RECORD:

PLEASE TAKE NOTICE that on February 27, 2012, at 10:00 a.m. or as soon

thereafter as the matter may be heard in Courtroom 10D of the above-entitled court,

TAYLOR ❖ BLESSEY LLP

located at 411 West Fourth Street, Santa Ana, California 92701, defendants David

Cossman, M.D., Taylor Blessey, LLP, N. Denise Taylor, Barbara M. Reardon, and

Andrea Hilbert  (collectively "Taylor Blessey defendants ") will move this Court for

an order dismissing plaintiff's Complaint under *Federal Rules of Civil Procedure*

Rule 12(b)(6), on the grounds that the Complaint fails to state a claim upon which

relief may be granted.

This Motion will be based on this Notice of Motion, the Memorandum of Points

and Authorities filed in support thereof, on such oral and documentary evidence as

shall be introduced at the time of the hearing, and on all papers and pleadings on file

herein.  This motion is made following the conference of counsel pursuant to L.R. 7-3

which took place on January 17, 2012.

The Taylor Blessey defendants move to dismiss the Complaint on the grounds

that plaintiff's Complaint fails to state a claim upon which relief can be granted and

on the specific grounds as to each individual cause of action therein as appear more

fully in the following Memorandum of Points and Authorities.

WHEREFORE, the Taylor Blessey defendants pray as follows:

1. That the Complaint and each claim for relief alleged therein be dismissed as

   against the Taylor Blessey defendants;

2. That plaintiff be ordered to take nothing from the Taylor Blessey defendants;

3. That judgment be entered in favor of the Taylor Blessey defendants;

4. For costs of suit; and

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(B)(6)

1    5.  For such other relief as the Court deems just.

2

3   DATED: January 17, 2012              TAYLOR BLESSEY LLP

4

5                                        By:  /S/ N. Denise Taylor
                                             N. DENISE TAYLOR
6                                            BARBARA M. REARDON
                                             Attorneys for Defendants,
7                                            DAVID COSSMAN, M.D.; TAYLOR
                                             BLESSEY, LLP; N. DENISE TAYLOR,
8                                            BARBARA M. REARDON, ANDREA P.
                                             HILBERT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES ....................................................... ii

I.      INTRODUCTION AND BRIEF HISTORY OF PRIOR LITIGATION ....... 1

II.     THE LEGAL STANDARD ................................................. 3

III.    PLAINTIFF'S COMPLAINT FAILS TO STATE COGNIZABLE
        CLAIMS AGAINST THE TAYLOR BLESSEY DEFENDANTS .............. 5

IV.     PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON
        WHICH RELIEF MAY BE GRANTED AS TO EACH CAUSE OF
        ACTION ALLEGED AGAINST THE TAYLOR BLESSEY
        DEFENDANTS .......................................................... 7

        A.   Plaintiff Fails To State a Claim Upon Which Relief May Be
             Granted Pursuant to 18 United States Code 241 Against the Taylor
             Blessey Defendants ............................................. 7

        B.   Plaintiff Fails to State a Claim Upon Which Relief May Be
             Granted Under The Bane Act Against the Taylor Blessey
             Defendants ..................................................... 8

        C.   Plaintiff Fails To State A Claim Upon Which Relief May Be
             Granted for Denial of Federal and State Due Process and Equal
             Protection by Civil Conspiracy ................................ 9

        D.   Plaintiff Fails To State A Claim Upon Which Relief May Be
             Granted  For Negligence And Conspiracy To Commit Negligence
             Against the Taylor Blessey Defendants ........................ 11

        E.   Plaintiff Fails To State A Claim Upon Which Relief May Be
             Granted For Fraud And Conspiracy To Commit Fraud Against the
             Taylor Blessey Defendants .................................... 12

V.      THE LITIGATION PRIVILEGE OF CIVIL CODE §47 BARS ANY
        CLAIM AGAINS THE TAYLOR BLESSEY DEFENDANTS AS TO
        THE DEFENSE OF THE SINGH ACTION .................................. 13

VI. COLLATERAL ESTOPPEL PRECLUDES PLAINTIFF FROM
        ASSERTING CLAIMS IN HER COMPLAINT AS THESE ISSUES
        HAVE ALREADY BEEN ADJUDICATED ................................... 14

VII.    CONCLUSION ......................................................... 16

i

# TABLE OF AUTHORITIES

**Cases**

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).................................................. 4

*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207]............................................................................................................................. 11

*Ballisteri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988) ................................. 4

*Bartley v. California Association of Realtors* (1980) 115 Cal. App. 3d 930, 935 .............................. 10

*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217. 12

*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)........................................... 4

*Gonsalves v. Hodgson* (1951) 38 Cal.2d 91, 100-101 ....................................................... 12

*Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 973 (8th Cir. 1968), *cert. denied*, 395 U.S. 961 (1969).................................................................................................................................... 4

*Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) ............ 4

*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 952 ....................................................... 13

*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496 ......... 11

*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 .......................................................... 15

*Mattco Forge Inc. v. Arthur Young & Co.* (1992) 5 Cal.App.4th 392, 402...................................... 13

*Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001) .......................................................... 4

*Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989)...................... 4

*NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986)............................................... 5

*Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995) ............................ 5

*Ramalingam v. Thomson* (2007) 151 Cal.App.4th 491, 500 ....................................................... 14

*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal. App. 4th 453, 464 .......................... 2

*Rothman, supra*, 49 Cal.App.4th at 1150........................................................................... 14

*Rusheen, Supra*, 37 Cal.4th at 1063 ................................................................................ 14

*Schick v. Bach* (1987) 193 Cal.App.3d 1321, 1327-1328......................................................... 9

*Silberg, supra*, 50 Cal.3d at 212 .................................................................................... 14

# TABLE OF AUTHORITIES

*Stansfield v. Starke* (1990) 220 Cal.App.3d 70, 73.................................................................. 12

*Western Mining Council v. Watt*, 643 F.2d 218, 624 (6th Cir. 1981), *cert. denied*, 454 U.S. 1031 (1981)............................................................................................................................ 4

**Statutes**

California *Civil Code* §47 ........................................................................................................ 13

*Civil Code* § 1714.10(c)..................................................................................................... 7, 8

*Civil Code* §1714.10(a)........................................................................................................... 7

*Civil Code* §47 ................................................................................................................... 8, 14

*Code of Civil Procedure* §128.7 ............................................................................................. 3

**Other Authorities**

6 *Witkin*, Summary of California Law, Torts, Section 732 (9th Ed. 1988) ........................... 11

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(B)(6)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION AND BRIEF HISTORY OF PRIOR LITIGATION

Multiple defendants have already filed Motions to Dismiss and anti-SLAPP motions in this matter.  This action is the latest in a series brought by plaintiff, all arising out of an alleged MTA bus accident. Defendant will not belabor the tortured procedural history of the various lawsuits filed by plaintiff since losing her 2006 action against the Metropolitan Transit Authority, *Rosen v. Los Angeles County Metropolitan Transportation Authority, et al.,* Los Angeles Superior Court case number BC360683 ("MTA case").  It is enough to say that plaintiff, through the offices of her brother-in-law attorney, has engaged in a personal vendetta against all persons involved in that matter, and against all persons involved in the subsequent related lawsuits she has filed.

Moving defendants on this Motion are David Cossman, M.D. who served as plaintiff's causation expert in the MTA litigation.  The remaining defendants on this Motion are the lawyers who represent Dr. Cossman in the action *Rosen v. Singh*, Los Angeles Superior Court case number BC441076 ("Singh case").  That action is still pending in the Superior Court; it alleges that misconduct and conspiracy by plaintiff's expert witnesses in the MTA case (including Dr. Cossman)  caused or contributed to her unsuccessful outcome in that matter.  Some of the defendants in the Singh case filed successful anti-SLAPP motions which are presently pending before the Court of Appeal.  Dr. Cossman is the only defendant remaining in the Superior Court.  The

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

TAYLOR ❖ BLESSEY LLP

assigned judge in the Superior Court, the Honorable Luis Lavin has recently imposed

sanctions against Glenn Rosen, counsel for plaintiff in that action as well as this one,

based on specific findings that plaintiff's "factual contentions" regarding participation

in a conspiracy by Dr. Cossman with Katherine Pene, her law firm, and/or the MTA,

or with the Honorable Luis Lavin did not have evidentiary support and are not likely

to have evidentiary support.  (Certified Copy of Court's Order of 8/29/11 attached

hereto as **Exhibit A**.)

The Singh action followed  *Rosen v. Katherine Pene, et al.,* Orange County case

number 30-2009 00327297 ("Orange County case").  In the Orange County case,

plaintiff alleged that her retained experts in the MTA case were unable to testify as to

the nature and cause of her injuries due to the alleged conversion of an angiogram by

Dr. Openshaw, a defendant in the Orange County action.  On appeal, the Court of

Appeal, Fourth District, Division Three, determined that the angiogram issue was of

no consequence as the jury's verdict was based on the finding that the MTA did not

breach any duty of care it owed plaintiff and the jury never reached the causation

element of plaintiff's claim.  *Rosen v. St. Joseph Hospital of Orange County* (2011)

193 Cal. App. 4th 453, 464.  (Opinion of Court of Appeal attached hereto as **Exhibit

B**.)

In the present Complaint, as in all others filed previously, plaintiff makes

outrageous claims, based not upon any specific facts as to each defendant, but instead

upon utterly baseless and conclusory statements regarding supposed misconduct by

esteemed members of the California judiciary and State Bar.  It is important to note that both the Court of Appeal's opinion in the Orange County matter and Judge Lavin's sanctions order in the Singh matter have determined the claims raised in this matter adversely to plaintiff.  The Court of Appeal in the Orange County case determined that the jury's verdict in the MTA case (that there was no negligence by the defendant) resolves plaintiff's claim that the claimed absence of an angiogram (relevant as to causation only) caused her any damage.  Similarly, Judge Lavin's sanctions order under *Code of Civil Procedure* §128.7 in the Singh case determined that plaintiff had no factual basis for her scurrilous claims of conspiracy..

Plaintiff claims that virtually every defendant and defense lawyer involved in the lawsuits she has filed has conspired in the past or is presently conspiring against her, allegedly to violate her constitutional rights and to deny her fair adjudication of her cases in state court.  Plaintiff prays for significant monetary damages but predicates her demand solely on vague allegations and conclusory statements not supported by any concise facts or claims of specific conduct by any defendant.

Therefore, the Motion to Dismiss by TAYLOR BLESSEY DEFENDANTS should be granted.

## II.

## THE LEGAL STANDARD

Pursuant to *Federal Rules of Civil Procedure,* Rule 12(b)(6), a Motion to Dismiss for failure to state a claim tests the legal sufficiency of the claims in the

Complaint, as well as reasonable inferences to be drawn therefrom.

A Complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Ballisteri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988). A dismissal is appropriate where it appears beyond reasonable doubt that the plaintiff can prove no set of facts, which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

A motion to dismiss for failure to state a claim should be granted when it is clear a plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989); *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).

While a short, clear and concise pleading is required, mere conclusory allegations are insufficient to state a claim for relief. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Similarly, conclusions of law disguised as allegations of fact are not deemed admitted and should be disregarded by the court. *See, e.g. Western Mining Council v. Watt*, 643 F.2d 218, 624 (6th Cir. 1981), *cert. denied*, 454 U.S. 1031 (1981); *Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 973 (8th Cir. 1968), *cert. denied*, 395 U.S. 961 (1969). In this matter, plaintiff's Complaint does not meet the short, clear and concise pleading requirement; it is long, obscure and verbose, alleging only the most conclusory claims against these moving defendants.

1

2

3

**III.**

**PLAINTIFF'S COMPLAINT FAILS TO STATE COGNIZABLE CLAIMS**

**AGAINST THE TAYLOR BLESSEY DEFENDANTS**

4 The Court must construe the Complaint in the light most favorable to plaintiff.

5 *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986); *Parks School of*

6

7 *Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Notwithstanding the

8 foregoing, and even viewing all plaintiff's allegations as true, plaintiff's Complaint

9 fails to state any cognizable claims against the TAYLOR BLESSEY DEFENDANTS

10

11 .

12 A Motion to Dismiss should be granted when it is clear a plaintiff can prove no

13 set of facts in support of the claim that would entitle her to relief. *Neitzke, supra,* at

14

15 326-27. Moreover, conclusory allegations are insufficient to state a claim for relief.

16 *Aldabe, supra,* at 1092.

17 Plaintiff's Complaint is not a model of clarity. The most that can be gleaned

18

19 from it as to Defendant, David Cossman, M.D., is the claim that Dr. Cossman and

20 plaintiff's other expert witnesses in the MTA case "were disloyal to her, were working

21 against her and in the interest of the MTA, were doing so subtly in an attempt not to

22

23 be caught." (Complaint 2: 17-20). Plaintiff claims that Dr. Cossman was part of a

24 conspiracy "to deprive Robin Rosen of her ability to be successful in her prosecution

25 of her case against the LACMTA," and that she had "no chance of being successful

26

27 when all of her experts and her treating doctor were working to make sure she lost her

28 case and were working in the interest of the LACMTA." (Complaint 3:5-8). Those

TAYLOR ❖ BLESSEY LLP

claims are identical to those alleged in the Singh action which is still pending in Los Angeles County Superior Court as to Dr. Cossman.

The remaining Taylor Blessey defendants (Taylor Blessey LLP, N. Denise Taylor, Barbara M. Reardon, and Andrea P. Hilbert) represent Dr. Cossman in the Singh matter.  As to these defendants, plaintiff claims "defendant attorneys and their employers and firms as well as their clients were in violation of Robin Rosen's civil rights, not only conspired with their clients but conspired with each other in order to make sure Robin Rosen's rights were violated and no sums would have to be paid by or on behalf of their clients to Robin Rosen."  (Complaint 8:18-22).  Disregarding the conclusory claim that the defendants "conspired with each other in order to make sure Robin Rosen's rights were violated," plaintiff's claim is that the defense lawyers in the Singh matter worked to defend their client and to assure that "no sums would have to be paid by or on behalf of their clients to Robin Rosen."

Plaintiff alleges that the other defense counsel conspired with members of the California judiciary to "defraud Robin Rosen of a fair and reasonable adjudication of her case in the action of Rosen v. Singh." (Complaint 12:19-26).  Plaintiff's entire "conspiracy theory," however, is devoid of any actual facts to support its outrageous claims.  Plaintiff's Complaint contains only inflammatory allegations without any factual against the Taylor Blessey defendants.

## IV.

## PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AS TO EACH CAUSE OF ACTION ALLEGED AGAINST THE TAYLOR BLESSEY DEFENDANTS

### A.   Plaintiff Fails To State a Claim Upon Which Relief May Be Granted Pursuant to 18 United States Code 241 Against the Taylor Blessey Defendants

In plaintiff's first cause of action against the Taylor Blessey defendants, plaintiff alleges a violation of 18 U.S.C. 241. That statute is a criminal statute which contains no civil remedy. Even assuming plaintiff can surmount that hurdle, she cannot avoid the requirement that "No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading . . ." *Civil Code* §1714.10(a).

Plaintiff concedes that she does not have a court order allowing her to bring this conspiracy cause of action against the Taylor Blessey defendants, but claims that both exceptions to *Civil Code* § 1714.10(c) apply: "This section shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain."

Plaintiff does not claim that the Taylor Blessey defendants represented her in

TAYLOR ❖ BLESSEY LLP

any matter.  She acknowledges they are opposing counsel in the Singh matter.   As opposing counsel, they owe no duty to her.  Plaintiff's claim that the Taylor Blessey defendants owed her a duty "not to violate her constitutional or civil rights, which they knowingly did," (Complaint 8: 12-14) is not supported by the allegations of her Complaint nor by applicable law.  Attorneys do not violate the constitutional rights of their adversaries by providing an aggressive defense to their clients.

Similarly, plaintiff fails to provide any support for application of the second exception to *Civil Code* § 1714.10(c).  Plaintiff's claim that the Taylor Blessey defendants went beyond their performance of a professional duty to serve their client and involved a conspiracy to violate a legal duty in furtherance of financial gain is conclusory; even if the claim were competently alleged, the actions of Taylor Blessey defendants in defending their client are protected by the litigation privilege of *Civil Code* §47 (*see infra*).

Since plaintiff cannot satisfy either of the exceptions of *Civil Code* §1714.10(a) and she failed to obtain a prior Court order allowing for the filing of this civil conspiracy cause of action against the Taylor Blessey defendants, plaintiff's first cause of action fails to state a claim upon which relief may be granted.

**B.**    **Plaintiff Fails to State a Claim Upon Which Relief May Be Granted Under The Bane Act Against the Taylor Blessey Defendants**

The Bane Act, California *Civil Code* §52.1, provides for a damages cause of action against individuals who have interfered or attempted to interfere with the

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

TAYLOR ❖ BLESSEY LLP

exercise or enjoyment of rights secured by the Constitution or laws of the United States by means of violence or threats of violence. Plaintiff's conclusory allegations as to this claim lack evidentiary support and are insufficient to state such a claim under the Bane Act. Plaintiff claims that "Each defendant has intentionally interfered with or attempted to interfere with Robin Rosen's civil rights by threatening or committing violent acts." (Complaint 8:7-13). Additionally, plaintiff goes so far as to allege that defendants "coerced" the "trial courts of Robert Hess, Robert Moss, Luis Lavin, and the Court of Appeal, Fourth District, and the Court of Appeal, Second District, Division Five, to deny Robin in violation of the Bane Act of her constitutionally protected rights." (Complaint 21: 8-10).

Plaintiff's Complaint, however, contains no facts to support these very serious allegations of judicial misconduct. The Taylor Blessey defendants respectfully submit that plaintiff's request for relief pursuant to the Bane Act fails to state a claim upon which relief may be granted.

C. **Plaintiff Fails To State A Claim Upon Which Relief May Be Granted for Denial of Federal and State Due Process and Equal Protection by Civil Conspiracy**

A cause of action based on a claimed conspiracy requires more than conclusory allegations that defendants engaged in a conspiracy. Rather, the complaint must allege facts showing: 1) the formation and operation of the conspiracy; 2) the wrongful act or acts done pursuant thereto; and 3) the damage resulting from such act or acts. *Schick v. Bach* (1987) 193 Cal.App.3d 1321, 1327-1328. The Complaint

9

1    must set forth facts which indicate the existence of the conspiracy.  *Bartley v.*

2    *California Association of Realtors* (1980) 115 Cal. App. 3d 930, 935.  The Complaint

3

4    must allege "specific overt acts" performed by defendants in pursuance of the purpose

5    of the conspiracy.  *Id.*

6          Here, plaintiff has not pled any cognizable conspiracy among the Taylor

7

8    Blessey defendants, or between the Taylor Blessey defendants and other defendants or

9    parties or members of the judiciary identified in the Complaint.   Plaintiff has not set

10   forth any facts establishing the formation or operation of the conspiracy. She has not

11   specified the wrongful acts she claims these moving defendants committed or any

12

13   specific over acts which would indicate the existence of a conspiracy.  Rather,

14   plaintiff makes the bare assertion that, "All defendants have participated in some form

15   or manner in the denial of the due process and equal protection rights both federal and

16

17   state of Robin Rosen." (Complaint 26: 13-15).  This is an insufficient allegation.

18         This is the third time that plaintiff has claimed various parties were engaged in

19   a conspiracy to deprive her of her rights.  In the Orange County action, the Court of

20   Appeal has conclusively determined that any supposed conspiracy did not result in

21

22   damage to plaintiff because of the jury's verdict in the MTA Action. Therefore, issue

23   preclusion serves as a further bar to PLAINTIFF's requested relief. *(see infra)*

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(B)(6)

TAYLOR ❖ BLESSEY LLP

**D.**   **Plaintiff Fails To State A Claim Upon Which Relief May Be Granted For Negligence And Conspiracy To Commit Negligence Against the Taylor Blessey Defendants**

A cause of action for negligence requires evidence of a legal duty to use due care, a breach of the legal duty, and that the breach is a proximate cause of the resulting injury. 6 *Witkin*, Summary of California Law, Torts, Section 732 (9th Ed. 1988).  The basic elements of a negligence action are: (1) The defendant had a legal duty to conform to a standard of conduct to protect the plaintiff, (2) the defendant failed to meet this standard of conduct, (3) the defendant's failure was the proximate or legal cause of the resulting injury, and (4) the plaintiff was damaged. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

Plaintiff's negligence claim necessarily fails since the Taylor Blessey defendants, as opposing counsel and plaintiff's former expert, owed no duty to plaintiff.  Absent the existence of a duty, plaintiff's claim for negligence fails.  The conspiracy to commit negligence claim fails for the same reasons – it does not and cannot establish the existence of a duty; it is based upon unsupported conclusory allegations; it is barred by collateral estoppel by virtue of the Opinion of the Court of Appeal in the Orange County action; and, as set forth more fully in defendants' anti-SLAPP motion, it fails because a party cannot conspire (an intentional act) to be negligent.

TAYLOR ❖ BLESSEY LLP

E.   **Plaintiff Fails To State A Claim Upon Which Relief May Be Granted For Fraud And Conspiracy To Commit Fraud Against the Taylor Blessey Defendants**

The elements of a cause of action for fraud are a representation as to a material fact, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage.   The absence of any of these required elements will preclude recovery. *Gonsalves v. Hodgson* (1951) 38 Cal.2d 91, 100-101.  In addition to the foregoing, the California Supreme Court imposes even greater strictures upon fraud claims: "Fraud must be specifically pleaded...every element of the cause of action for fraud must be alleged in the proper manner, (i.e., factually and specifically), and the policy of liberal construction of pleading...will not ordinarily be invoked to sustain the pleading defective in any material respect."   *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217.

When pleading a cause of action for fraud, plaintiffs must plead factually and specifically "how, when, where, to whom and what means the [fraudulent] representations were tendered." *Stansfield v. Starke* (1990) 220 Cal.App.3d 70, 73.

Plaintiff's Complaint fails to meet these strict pleading rules.  It does not contain any factual details as to any specific defendant; it is silent as to how, when, or where fraudulent representations were made.   For example, plaintiff makes the circular assertion that the fraud by defendants "and each of them begin anew with every act done on behalf of the furtherance of the conspiracy to defraud Robin Rosen, make mispresentations to Robin Rosen, and to the courts and to the people of

12

TAYLOR ❖ BLESSEY LLP

California continue and are multiplied exponentially by the daily conduct of the participants of these frauds." (Complaint 38: 21-26)  Plaintiff's allegations are unintelligible and conclusory; they do not satisfy the strict pleading requirements for a cause of action alleging fraud.

Moreover, plaintiff's conspiracy to commit fraud claim fails for the same reasons as set forth above as to the third and fourth causes of action – they are based upon unsupported conclusory allegations and are barred by collateral estoppel—and for the reasons set forth in defendants' anti-SLAPP motion.

## V.

## THE LITIGATION PRIVILEGE OF CIVIL CODE §47 BARS ANY CLAIM AGAINS THE TAYLOR BLESSEY DEFENDANTS AS TO THE DEFENSE OF THE SINGH ACTION

California *Civil Code* §47 provides for an absolute privilege for statements made in the course of judicial proceedings and precludes the use of such statements as a basis for *all* tort liability except for malicious prosecution. *Mattco Forge Inc. v. Arthur Young & Co.* (1992) 5 Cal.App.4th 392, 402; *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 952.

The California Supreme Court has established a four part test for application of the litigation privilege, "the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." *Ramalingam v. Thomson* (2007) 151 Cal.App.4th

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

491, 500. The privilege is to be broadly applied and "doubts are resolved in favor of the privilege." *Id.*

In the judicial or quasi-judicial context, the privilege applies to any communications, regardless of whether the communications are made inside or outside of the courtroom, and furthermore, irrespective of whether the court or its officers are involved.  (*Silberg, supra*, 50 Cal.3d at 212*; Rothman, supra*, 49 Cal.App.4[th] at 1150.)

The purpose of the privilege is to "afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgment and to avoid unending litigation." *Rusheen, Supra,* 37 Cal.4th at 1063.  It has even been extended to prevent civil actions based on perjury. *Id.* at 1058.

Here, all of the alleged acts or omissions which form the basis for plaintiff's claims against the Taylor Blessey defendants as to the defense of the Singh action arise out of acts protected by  *Civil Code* §47.  This conduct is absolutely protected, and cannot form the basis for any claim by the plaintiff.

## VI.
## COLLATERAL ESTOPPEL PRECLUDES PLAINTIFF FROM ASSERTING CLAIMS IN HER COMPLAINT AS THESE ISSUES HAVE ALREADY BEEN ADJUDICATED

"Collateral estoppel or issue preclusion "precludes relitigation of issues argued and

TAYLOR ✣ BLESSEY LLP

1    decided in prior proceedings." [1] *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.

2        As one court explained, the threshold requirements of issue preclusion are:

4        (1) the issue is identical to that decided in the former proceeding,

5        (2) the issue was actually litigated in the former proceeding, (3) the

6        issue was necessarily decided in the former proceeding, (4) the

7        decision in the former proceeding is final and on the merits, and

8        (5) preclusion is sought against a person who was a party or in

9        privity with a party to the former proceeding.  When those

10       requirements are met, the propriety of preclusion depends upon

11       whether application will further the public policies of preservation

12       of the integrity of the judicial system, promotion of judicial

13       economy, and protection of litigants from harassment by vexatious

14       litigation. <u>Castillo v. City of Los Angeles</u> (2001) 92 Cal.App.4th

15       477, 481, quoting <u>Lucido</u>, *supra*, 51 Cal.3d at 341.

17   The 'identical issue' requirement addresses whether 'identical factual allegations' are at

18   stake in the two proceedings . . . ." *Lucido* at 342.

20       In this matter, plaintiff's conspiracy claims proceeded to a final judgment on the

21   merits adverse to plaintiff in the Orange County action.  In *Rosen v. St. Joseph*

22   *Hospital of Orange County (See* **Exhibit B**), plaintiff claimed various persons, not

23   including these moving defendants, were involved in a conspiracy which caused her to

25   lose the benefits of her claim against the MTA.  In affirming the judgment of the

26   Superior Court, the Court of Appeal stated as follows: "*The jury, however, never*

TAYLOR ❖ BLESSEY LLP

*reached the causation element of Rosen's claim against the MTA because it returned a verdict finding the MTA did not breach any duty it owed Rosen.  Consequently, as a matter of law, Rosen cannot allege Openshaw, Vascular Specialists, and St. Joseph Hospital caused her to lose the action against the MTA.*"  193 Cal. App.4[th] 453, 464.

The reasoning of the Court of Appeal is equally applicable to and binding on this action as to the claim against Dr. Cossman.  Since the MTA jury did not reach the causation issue, plaintiff cannot allege that Dr. Cossman "caused her to lose the action against the MTA."

Collateral estoppel serves as a bar to this action, and the Motion to Dismiss by Taylor Blessey defendants should be granted.

### VII.
### CONCLUSION

Based upon the foregoing, the Taylor Blessey defendants respectfully requested that the Motion to Dismiss, pursuant to *Federal Rule of Civil Procedure* 12(b)(6) be granted, and plaintiff's Complaint be dismissed with prejudice as to these defendants.


DATED:  January 17, 2012                TAYLOR BLESSEY LLP



By: /S/ N. Denise Taylor _____
        N. DENISE TAYLOR
        BARBARA M. REARDON
        Attorneys for Defendants,
        DAVID COSSMAN, M.D.; TAYLOR
        BLESSEY, LLP; N. DENISE TAYLOR,
        BARBARA M. REARDON, ANDREA P.
        HILBERT

TAYLOR ❖ BLESSEY LLP

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 08/29/11 | | DEPT. 13 |
|---|---|---|
| HONORABLE LUIS A. LAVIN | JUDGE | K. SANDOVAL | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| RULING ON SUBMITTED MATTER NONE | Deputy Sheriff | NONE | Reporter |

| 8:30 am | BC441076 | Plaintiff Counsel | NO APPEARANCES |
|---|---|---|---|
| | ROBIN ROSEN VS JAI SINGH ET AL | Defendant Counsel | |

NATURE OF PROCEEDINGS:

RULING ON SUBMITTED MATTER;

Court having placed this matter under submission
on August 16, 2011, rules as follows:

The Order regarding Code of Civil Procedure Section
128.7 Sanctions against Glenn M. Rosen, Esquire,
State Bar Number 73826, is signed, filed and
a conformed copy is provided to counsel as indicated
below.

The Order contains the following:

The Order to show cause is discharged as to Mr.
Rosen's law firm.  Defendant Dr. Cossman's
demurrer and motion to strike on calendar for
September 8, 2011 are MOOT and advanced to this
date and VACATED.

If plaintiff is interested in pursuing this lawsuit
against Dr. Cossman, she must file a new amended
pleading within 20 days of service of this Order;
that pleading must comply with CCP Section 128.7.

Glenn M. Rosen shall pay $3,000.00 in monetary
sanctions to the Los Angeles Superior Court within
20 days of service of this order.  Failure to
pay the ordered sanctions by the due date will result
in this matter being forwarded to the Collections

Page   1 of   3   DEPT. 13

MINUTES ENTERED
08/29/11
COUNTY CLERK

Exhibit "A"                                        1

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | | |
|---|---|---|---|
| DATE: 08/29/11 | | | **DEPT.** 13 |
| HONORABLE LUIS A. LAVIN | JUDGE | K. SANDOVAL | DEPUTY CLERK |
| HONORABLE RULING ON SUBMITTED MATTER | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE | Deputy Sheriff | NONE | Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC441076 | Plaintiff Counsel | NO APPEARANCES |
| | ROBIN ROSEN VS JAI SINGH ET AL | Defendant Counsel | |

**NATURE OF PROCEEDINGS:**

Division at 111 North Hill Street, Room 422F, Los
Angeles, CA 90012 for referral to a private
collections vendor without further notice or
order of the Court.

Order to show cause for proof of payment of the
sanctions is set for October 7, 2011 at 8:30 a.m.
in Department 13.

Clerk to give notice.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
8-29-11 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: August 30, 2011

John A. Clarke, Executive Officer/Clerk

Page   2 of   3   DEPT. 13

| MINUTES ENTERED |
|---|
| 08/29/11 |
| COUNTY CLERK |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/29/11 | DEPT. 13 |
| HONORABLE LUIS A. LAVIN          JUDGE | K. SANDOVAL          DEPUTY CLERK |
| HONORABLE                        JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| RULING ON SUBMITTED MATTER | |
| NONE                        Deputy Sheriff | NONE                        Reporter |

8:30 am  BC441076

ROBIN ROSEN
VS
JAI SINGH ET AL

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCES

NATURE OF PROCEEDINGS:

By: _____  
          K. Sandoval


GLENN M. ROSEN, ESQ.
LAW OFFICES OF GLENN ROSEN
3 LEICESTER COURT
LAGUNA NIGUEL, CA  92677


BARBARA REARDON, ESQ.
TAYLOR BLESSEY
350 S. GRAND AVENUE
#3850
LOS ANGELES, CA  90071


OFFICE OF THE CHIEF TRIAL COUNSEL/INTAKE
THE STATE BAR OF CALIFORNIA
1149 SOUTH HILL STREET
LOS ANGELES, CA  90015-2299


I certify that this is a true and correct copy of the
original  m.o.  on file in this office consisting
of  3  pages. JOHN A. CLARKE, Executive Officer/Clerk of the
Superior Court of California, County of Los Angeles.
Date:  DEC 1 5 2011     By_____ Deputy
                              D. KNOWLES

Page  3 of  3   DEPT. 13

MINUTES ENTERED
08/29/11
COUNTY CLERK

Exhibit "A"                                    3

Filed 3/10/11

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ROBIN ROSEN, | |
| Plaintiff and Appellant, | G043595 |
| v. | (Super. Ct. No. 30-2009-00327297) |
| ST. JOSEPH HOSPITAL OF ORANGE COUNTY et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from judgments of the Superior Court of Orange County, Robert J. Moss, Judge. Affirmed.

Law Offices of Glenn M. Rosen and Glenn M. Rosen for Plaintiff and Appellant Robin Rosen.

Schmid & Voiles and Denise H. Greer for Defendants and Respondents Kurt L. Openshaw, M.D., and Vascular and Interventional Specialists of Orange County.

Carroll, Kelly, Trotter, Franzen & McKenna and Michael J. Trotter, Brenda M. Ligorsky, and David P. Pruett for Defendant and Respondent St. Joseph Hospital of Orange County.

\*          \*          \*

Exhibit "B"                                                                1

Plaintiff Robin Rosen appeals from two judgments the trial court entered after (1) sustaining defendants Kurt Openshaw, M.D., and Vascular and Interventional Specialists of Orange County's (Vascular Specialists) demurrer and (2) granting defendant St. Joseph Hospital of Orange County's (St. Joseph Hospital) joinder in Openshaw and Vascular Specialists' demurrer. The trial court sustained the demurrer on the ground Rosen's causes of action constituted spoliation of evidence claims barred by the Supreme Court's decisions in *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1 (*Cedars-Sinai*), and *Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464 (*Temple*). Rosen asserts the trial court erred in denying her leave to amend to allege Openshaw, Vascular Specialists, and St. Joseph Hospital owed a contractual duty to preserve evidence. We find no error and affirm the judgments.

I

### FACTS AND PROCEDURAL HISTORY

Because this appeal follows the sustaining of a demurrer, we summarize the underlying facts as alleged in the complaint. (*Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 240.) Our summary also includes facts subject to judicial notice.[1] (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

In October 2004, Rosen sustained injuries in an auto accident involving a Los Angeles County Metropolitan Transportation Authority (MTA) bus. In November 2004, Rosen suffered a debilitating stroke, which paralyzed one side of her body and left her unable to speak or care for herself. Following the stroke, St. Joseph

---

[1] All parties argue additional facts not alleged in Rosen's complaint. For example, they argue facts set forth in various briefs filed in the trial court and even declarations filed in support of another party's anti-SLAPP motion not at issue on this appeal. The fact these documents are in the appellate record does not mean we may consider their contents. In reviewing a trial court's ruling sustaining a demurrer, we are limited to the facts alleged on the face of the pleading and those properly subject to judicial notice. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

2

Hospital admitted Rosen for treatment and Openshaw, a partner in Vascular Specialists, performed an angiogram at St. Joseph Hospital to diagnose Rosen's condition.

Rosen thereafter sued the MTA, alleging the bus accident caused her stroke. Attorney Katherine Pene represented the MTA.  According to the allegations, during the litigation Pene and Openshaw stole the angiogram Openshaw performed because it showed that the impact of the collision with the MTA bus tore Rosen's left internal carotid artery, which caused her subsequent stroke.  Without the angiogram to review, Rosen's experts could not testify at their depositions that the bus accident caused Rosen's carotid artery to tear, which led to her stroke.  Moreover, without the angiogram as evidence, Rosen could not negotiate a meaningful settlement with the MTA even though her past medical damages exceeded $400,000 and her experts estimated her future care expenses at approximately $7 million.

At trial, the MTA successfully barred Rosen's experts from testifying the bus accident caused her stroke because the experts did not offer that opinion during their depositions.  The jury returned a verdict for the MTA, finding the MTA did not breach any duty of care it owed Rosen.  The jury never reached the question whether the bus accident caused Rosen's stroke.[2]

---

[2]      Rosen's complaint made no allegations regarding the outcome in the MTA trial.  St. Joseph Hospital, however, requested that we judicially notice certified copies of the special verdict, judgment, and minute order recording the jury's verdict in the MTA action.  Rosen filed no opposition to St. Joseph Hospital's request.  Finding these documents properly subject to judicial notice, we grant the request.  (Evid. Code §§ 452, subd. (d), 459; *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564-1566 [judgments, verdicts, and other court documents are properly subject to judicial notice for purposes of establishing the findings and decisions made in an earlier action].)

Exhibit "B"                                                                                           3

In December 2009, Rosen commenced this action against Pene, Pene's law firm, St. Joseph Hospital, Openshaw, and Vascular Specialists.  Based on her allegations Pene and Openshaw stole the angiogram, Rosen alleged causes of action for (1) conversion and conspiracy to commit conversion, (2) violation of fiduciary duty, (3) violation of privacy, and (4) intentional infliction of emotional distress.  Rosen's complaint also alleged a fifth cause of action, entitled "Cause of Action Against Katherine Pene," based on Pene's alleged misrepresentations regarding the MTA's insurance coverage.

Openshaw and Vascular Specialists demurred to Rosen's complaint and St. Joseph Hospital filed a notice of joinder in the demurrer.  The trial court sustained the demurrer without leave to amend on the first four causes of action because they essentially alleged a spoliation of evidence claim, a cause of action California does not recognize.  The trial court granted Rosen leave to amend her fifth cause of action.  Accordingly, Rosen filed a first amended complaint but alleged a cause of action against Pene and her law firm only.  The trial court thereafter entered judgment for Openshaw, Vascular Specialists, and St. Joseph Hospital.[3]  Rosen timely appealed from these judgments.

---

Openshaw and Vascular Specialists filed a separate request asking us to judicially notice the complaint in another lawsuit Rosen filed against her experts, alleging they also conspired with Pene on the MTA case to provide testimony benefiting MTA.  We deny Openshaw and Vascular Specialists' request because the complaint is irrelevant to the issues presented in this appeal. (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 ["Although a court may judicially notice a variety of matters [citation], only *relevant* material may be noticed"], overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.)

[3]      The trial court later granted Pene and her law firm's joint special motion to strike under the anti-SLAPP statute.  Rosen did not appeal that ruling.

4

Exhibit "B"                                                                                   4

II

DISCUSSION

A.    *Standard of Review*

We review Rosen's complaint de novo to determine whether it alleged facts sufficient to state a cause of action under any legal theory. (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487.)  In doing so, we look past the form of the pleading to its substance and ignore any erroneous or confusing labels Rosen attached. (*Richelle L. v. Roman Catholic Archbishop* (2003) 106 Cal.App.4th 257, 266.)  """We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]" . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]'" (*Sprinkles v. Associated Indem. Corp.* (2010) 188 Cal.App.4th 69, 75 (*Sprinkles*).)

"When a demurrer is sustained without leave to amend, the reviewing court must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect. . . ." (*Sprinkles, supra,* 188 Cal.App.4th at p. 76.)  The abuse of discretion standard governs our review of that question. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  "The plaintiff bears the burden of proving there is a reasonable possibility of amendment." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 (*Rakestraw*).)  To satisfy that burden, the plaintiff "'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.]  The assertion of an abstract right to amend does not satisfy this burden. [Citation.]  The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it.  Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.]  . . . . [¶]  The burden of showing that a reasonable possibility exists

5

that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.]  Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]"  (*Id.* at pp. 43-44.)

B.    *Spoliation of Evidence Claims*

Over a decade ago our Supreme Court prohibited a tort claim for intentional spoliation of evidence against either a party to the underlying litigation, commonly known as first party claims, or a nonparty to the underlying litigation, so-called third party claims.  (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 17-18 [no tort cause of action lies against a party for the intentional destruction or suppression of evidence when the injured party discovered, or should have discovered, the spoliation before the litigation concluded]; *Temple, supra,* 20 Cal.4th at p. 466 ["We conclude that no tort cause of action will lie for intentional third party spoliation of evidence"].)

In *Cedars-Sinai* and *Temple,* the Supreme Court declined to recognize intentional spoliation as a tort because it found the societal burdens associated with permitting tort remedies for intentional spoliation outweighed the benefits.  (*Cedars-Sinai, supra,* 18 Cal.4th at p. 17; *Temple, supra,* 20 Cal.4th at pp. 466, 478.)  The Court emphasized its strong policy against creating derivative tort remedies for ligation-related misconduct when sufficient nontort remedies existed to punish and deter the misconduct.  (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 8-13; *Temple, supra,* 20 Cal.4th at p. 471.)  For first party spoliation, the Court found existing nontort remedies included (1) an evidentiary inference against the party who destroyed the evidence or rendered it unavailable; (2) discovery sanctions ranging from monetary and contempt sanctions to issue, evidence, and even terminating sanctions; (3) State Bar discipline against any attorney involved in spoliation of evidence; and (4) criminal penalties.  (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 11-13.)

6

Exhibit "B"                          6

For third party spoliation, the *Temple* court acknowledged fewer remedies existed against nonparties, but nonetheless determined sufficient remedies remained, such as imposing monetary and contempt sanctions against third parties served with deposition subpoenas. A trial court also could draw adverse evidentiary inferences and impose other orders against a litigant who benefitted from a third party's spoliation when a sufficient relationship existed between the litigant and third party. Attorney discipline and criminal sanctions also remained available against third party spoliators. (*Temple, supra,* 20 Cal.4th at pp. 476-477, 473-474.)

The Supreme Court preferred using these nontort remedies in both first party and third party cases because using derivative tort remedies to punish and deter litigation misconduct would encourage "'a spiral of lawsuits.'" (*Cedars-Sinai, supra,* 18 Cal.4th at p. 9.) The Court explained that a litigant disappointed in the results always could file a new action seeking compensation from either the opposition or a third party. This litigation cycle would produce societal burdens greater than the miscarriage of justice resulting from the rare instance when a party could not discover and address spoliation during the underlying litigation. The Court noted perjury posed threats similar to spoliation of evidence, but it long ago rejected a civil action for perjury in favor of nontort remedies. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 8-11; *Temple, supra,* 20 Cal.4th at pp. 471-473.)

Finally, the Court observed that a spoliation of evidence claim would lead to speculative and inconsistent judgments because the jury, without knowing the spoliated evidence's "content and weight," could not meaningfully assess the role the evidence would have played in the underlying litigation or the amount of damages, if any, the victim suffered. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 13-14; *Temple, supra,* 20 Cal.4th at pp. 474-475.)

Neither *Cedars-Sinai* nor *Temple* decided whether a negligent spoliation of evidence claim existed in California. (*Temple, supra,* 20 Cal.4th at p. 471, fn. 3.) Later

7

appellate decisions, however, refused to recognize a cause of action for either first party or third party negligent spoliation based on the same policy considerations discussed in *Cedars-Sinai* and *Temple*. (See, e.g., *Coprich v. Superior Court* (2000) 80 Cal.App.4th 1081, 1089-1090 (*Coprich*) ["We therefore conclude there is no tort remedy for first party or third party negligent spoliation of evidence"]; *Farmers Ins. Exchange v. Superior Court* (2000) 79 Cal.App.4th 1400, 1404 (*Farmers Insurance*) ["The policy considerations that led the Supreme Court to refuse to recognize tort causes of action for both first party and third party intentional spoliation apply with equal force when the loss or destruction of evidence was the result of negligence"].)

The foregoing cases declined to recognize a spoliation of evidence claim because no general tort duty to preserve evidence existed. (See *Cooper v. State Farm Mutual Automobile Ins. Co.* (2009) 177 Cal.App.4th 876, 892, 892-894 (*Cooper*).) In *Temple*, however, the Supreme Court recognized that a duty to preserve evidence may exist independent of general tort law: "We observe that to the extent a duty to preserve evidence is imposed by statute or regulation upon the third party, the Legislature or the regulatory body that has imposed this duty generally will possess the authority to devise an effective sanction for violations of that duty. To the extent third parties may have a contractual obligation to preserve evidence, contract remedies, including agreed-upon liquidated damages, may be available for breach of the contractual duty." (*Temple, supra,* 20 Cal.4th at p. 477.)

In *Cooper*, the Court of Appeal held a duty to preserve evidence existed based on an express promise to preserve the evidence. *Cooper* involved a single-vehicle car accident allegedly caused by the tread separating from one of the vehicle's tires. The driver's insurance company, State Farm, took possession of the vehicle and the tire after settling the driver's property damage claim. State Farm hired an expert who examined the vehicle and concluded the tire was defectively manufactured. (*Cooper, supra,* 177 Cal.App.4th at pp. 879, 881-882.)

8

State Farm shared this information with the driver, who hired counsel and filed a product defect action against the tire manufacturer. The driver's counsel repeatedly wrote State Farm emphasizing the tire's critical importance as evidence, and warning State Farm its failure to preserve the tire would subject it to liability for spoliation. State Farm expressly promised to preserve the tire on three occasions. But, after foregoing a subrogation claim, State Farm sold the vehicle and tire as scrap. The driver sued State Farm, alleging he could not reasonably prevail on his claim against the tire manufacturer without the tire. (*Cooper, supra*, 177 Cal.App.4th at pp. 880, 882-883, 884-885, 888.)

The trial court granted nonsuit for State Farm following the driver's opening statement, concluding *Cedars-Sinai* and *Temple* barred the driver's claim. (*Cooper, supra*, 177 Cal.App.4th at p. 880.) The Court of Appeal reversed, holding State Farm's promise to preserve the tire distinguished the case from *Cedars-Sinai* and *Temple*: "Here, rather than seeking to impose a general tort duty of care on State Farm to preserve evidence, plaintiff, during his opening statement, presented prima facie facts to support an independent duty to preserve the tire based on State Farm's promise and plaintiff's reliance thereon. As stated in *Coprich*, while there may be no general tort duty to preserve evidence, this 'does not preclude the existence of a duty based on contract.' [Citations.] The general tort duty 'policy considerations do not negate the existence of a contractual obligation created by mutual agreement or *promissory estoppel*.' [Citation.] Additionally, '"[i]t is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to a duty of acting carefully, if he acts at all."' [Citation.] "... '[I]f the defendant enters upon an affirmative course of conduct affecting the interests of another, he is regarded as assuming a duty to act, and will thereafter be liable for negligent acts or omissions[.]'" [Citation.] [¶] Thus, it is settled law that one "who, having no initial duty to do so, undertakes to come to the aid of another ..." ... has "a duty to exercise due care in performance and is liable if ... the harm is suffered

9

because of the other's reliance upon the undertaking." [Citations.]' [Citation.]"
(*Cooper, supra*, 177 Cal.App.4th at p. 894, fn. omitted.)

C.      *Rosen's Causes of Action*

      The trial court disregarded the labels Rosen used to describe her first four causes of action and found her allegations amounted to spoliation of evidence claims barred by *Cedars-Sinai* and *Temple*.  We agree.

      Rosen's first cause of action alleged Openshaw and Pene conspired to convert the angiogram to prevent Rosen's experts from testifying the bus accident caused her stroke.  The second cause of action alleged Openshaw's conversion breached fiduciary duties he owed Rosen as her treating physician.  The third cause of action alleged St. Joseph Hospital violated Rosen's constitutional right of privacy by allowing Openshaw and Pene to suppress the angiogram.  The fourth cause of action alleged Openshaw and Pene intended to cause Rosen severe emotional distress when they prevented her from obtaining the angiogram.  Finally, Rosen's complaint alleged Openshaw acted as agent for Vascular Specialists and St. Joseph Hospital when he converted the angiogram.

      In essence, Rosen's complaint alleged Openshaw engaged in intentional spoliation of evidence by converting the angiogram and concealing evidence critical to Rosen's case against the MTA.  Rosen does not dispute this conclusion and does not argue her complaint adequately alleged any cause of action against Openshaw, Vascular Specialists, or St. Joseph Hospital.  Instead, Rosen argues only that the "trial court abused its discretion in not allowing leave to amend the complaint to state an express contract breached by Openshaw and St. Joseph Hospital."

D.      *Denial of Leave to Amend*

      Rosen insists the trial court erred in denying her leave to amend because, as in *Cooper*, she can allege contractual and fiduciary obligations supporting a cause of action against Openshaw, Vascular Specialists, and St. Joseph Hospital for failing to

Exhibit "B"                                                                      10

preserve evidence essential to her claim against the MTA. Specifically, she argues the covenant of good faith and fair dealing implied in her medical service agreement with Openshaw created a contractual duty requiring him to preserve Rosen's medical records for use in her action against the MTA. Rosen similarly argues Openshaw, as her physician, owed her a fiduciary duty to preserve her records. Finally, Rosen contends the hospital admission form and her constitutional right to privacy imposed a duty requiring St. Joseph Hospital to preserve her medical records for use in the MTA litigation.

The *Cooper* decision, however, did not rely on an implied contractual obligation or a duty arising from a preexisting relationship between the parties. Indeed, although an insurance contract existed between the parties in *Cooper*, the Court of Appeal did not rely on that contract as the basis for the duty to preserve evidence. Nor did the *Cooper* court rely on the plaintiff's preexisting relationship with his insurer as the basis for the duty, even though a "special relationship" exists between insured and insurer. (See *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1147 ["because of the 'special relationship' inherent in the unique nature of an insurance contract, the insurer's obligations attendant to its duty of good faith are heightened. Such obligations have been characterized as *akin* to fiduciary-type responsibilities"].) Instead, the *Cooper* court relied on State Farm's express promise to preserve specific evidence: "[A]ll involved parties understood that the factual bases for plaintiff's recovery were the representation by State Farm that it would keep the tire and plaintiff's reliance thereon. These factual allegations are legally sufficient to support recovery based on promissory estoppel and/or a voluntary undertaking. [Citations]." (*Cooper, supra,* 177 Cal.App.4th at p. 904.) Rosen does not seek to allege any promise comparable to the one in *Cooper*.

Other cases also conclude that general relationships similar to those Rosen seeks to allege do not support a spoliation of evidence claim. For example, in *Cedars-Sinai*, the relationship between a patient and a hospital did not support a duty to preserve evidence despite the allegation the hospital intentionally destroyed the plaintiff's medical

11

records to defeat the plaintiff's malpractice claim. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 4-5, 17-18.) Rosen argues *Cedars-Sinai* is distinguishable because it "involved records concerning the design and maintenance of certain equipment, not the patient's own medical records." Simply stated, Rosen is wrong. *Temple* involved the loss or concealment of medical equipment relevant to a products liability claim, rather than a plaintiff's medical records. (*Temple, supra*, 20 Cal.4th at pp. 467-468.) *Cedars-Sinai*, however, involved a defendant hospital allegedly spoliating the plaintiff's medical records to defeat the plaintiff's malpractice claim. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 4-5, 17-18.) Hence, contrary to Rosen's contention, the Supreme Court has specifically held a medical provider owes no tort duty to preserve a patient's medical records as evidence. Rosen fails to provide any credible explanation why *Cedars-Sinai* is not dispositive of her claims.

  *Farmers Insurance* also demonstrates general, preexisting relationships are not sufficient to support a spoliation of evidence claim. *Farmers Insurance* involved an insurance company that, like State Farm in *Cooper*, possessed, but ultimately destroyed, a defective tire crucial to its insured's product defect claim. (*Farmers Insurance, supra*, 79 Cal.App.4th at p. 1402.) The Court of Appeal nonetheless found no duty because the plaintiff did not allege any specific promise to preserve the tire. (*Id.* at pp. 1406-1407; see also *Forbes v. County of San Bernardino* (2002) 101 Cal.App.4th 48, 52 [even though court reporters owe a statutory duty to maintain their notes, no claim for negligent spoliation of evidence existed against the defendant county where a court reporter lost his notes making them unavailable for an appeal].) Rosen presents no authority supporting her contention an implied contractual obligation or preexisting relationship supports a spoliation of evidence claim.

  Moreover, even assuming a duty to preserve evidence existed, Rosen cannot allege a cause of action against Openshaw, Vascular Specialists, and St. Joseph Hospital because she cannot allege the breach of that duty caused her any damages.

12

Exhibit "B"              12

Rosen alleged the conversion of her angiogram prevented her from establishing the causation element on her claim against the MTA. The jury, however, never reached the causation element of Rosen's claim against the MTA because it returned a verdict finding the MTA did not breach any duty it owed Rosen. Consequently, as a matter of law, Rosen cannot allege Openshaw, Vascular Specialists, and St. Joseph Hospital caused her to lose the action against the MTA.

As explained above, Rosen bore the burden of proving a reasonable possibility she could amend her pleading to cure its defects. (*Rakestraw, supra,* 81 Cal.App.4th at p. 43.) St. Joseph Hospital's brief emphasized Rosen's failure to allege causation demonstrates she cannot state a valid cause of action. Rosen did not file a reply brief responding to St. Joseph Hospital's argument.[4] Thus, even assuming Rosen could show an express contractual duty existed, her failure to explain how she could amend her complaint to satisfy the element of causation is fatal to her appeal.

---

[4] At oral argument, Rosen for the first time asserted the angiogram related not only to the causation element of her negligence claim against the MTA but also the breach of duty element. Specifically, because the MTA disputed a collision occurred between its bus and Rosen's vehicle, Rosen argued the angiogram would have helped establish the fact a collision occurred — in addition to the fact the collision caused her injury — because she could not have suffered the torn carotid artery shown on the angiogram without the trauma associated with the collision.

"We do not consider arguments that are raised for the first time at oral argument." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9.) Nonetheless, this contention does not alter our analysis. As explained above, the Supreme Court refused to permit first and third party intentional spoliation causes of action because sufficient nontort remedies exist in the underlying litigation to punish and deter spoliation. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 8-13; *Temple, supra,* 20 Cal.4th at p. 471.) Rosen fails to provide any explanation why she could not address the alleged spoliation through the remedies available to her in the MTA action. For instance, Rosen provides no explanation why she could not have continued her experts' depositions until Openshaw and Pene provided the angiogram, or why she did not seek an adverse evidentiary inference if Openshaw and Pene could not produce the angiogram. Rosen gives no indication she made any effort whatsoever to address the unavailability of the angiogram during the pendency of the MTA action.

13

Exhibit "B"                                                                 13

III

DISPOSITION

The judgments are affirmed.  Openshaw, Vascular Specialists, and St. Joseph Hospital are to recover their costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


MOORE, J.


14

**CERITIFICATE OF SERVICE**

I hereby certify that on January 18, 2012, the foregoing NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF was electronically filed with The Clerk of the Court for the United States District Court, Central District of California, by using CM/ECF Electronic Filing System.

Participants in the case who are registered CM/ECF users will be served by the CM /ECF system.

Executed on January 18, 2012, in Los Angeles, California.


_____
JUDY CERVANTES,
Secretary to Barbara M. Reardon
Attorneys for Defendants,
DAVID COSSMAN, M.D.; TAYLOR
BLESSEY, LLP; N. DENISE TAYLOR,
BARBARA M. REARDON, ANDREA P.
HILBERT

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 350 South Grand Avenue, Suite 3850, Los Angeles, California 90071.

On January 18, 2012, I served the foregoing document(s) described as NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

SEE ATTACHED SERVICE LIST

☒ **(BY MAIL)** I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY FACSIMILE)**  I served by facsimile a true copy of the above-described document.  I am "readily familiar" with this firm's practice of processing correspondence by fax.  Under that practice documents are placed in our fax machine and are processed and received simultaneously at their destination.  The above-referenced document(s) was placed in the fax machine with all costs of faxing prepaid, directed to each party (using their fax number), listed on the attached Service List.  Once the document has been transmitted, the fax machine provides a report indicating time of completion.

☐ **(BY PERSONAL SERVICE)** I delivered such envelope(s) by hand to the offices of the addressee(s).

☐ (State)  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the above is true and correct.

Executed on January 18, 2012, at Los Angeles, California.

Judy Cervantes
Type or Print Name

Signature

1

**SERVICE LIST**

2

Re: <u>Rosen v. Booth</u>
Case No.: SACV11-01703-AG

3

4

Harvey W. Wimer, III, Esq.                    Attorneys for Defendant,
Dennis J. Mahoney, Esq.                       Hertz Claim Management

5

GRAVES & KING LLP

6

P.O. Box 1548

7

3610 Fourteenth Street, Second Floor
Riverside, CA 92502-1548

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28